Slip Op. 16 - 100

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| PLEASURE-WAY INDUSTRIES, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Before: R. Kenton Musgrave, Senior Judge |
| | : | Court No. 10-00173 |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**OPINION**

[On Customs classification of certain motorhomes, denying plaintiff's motion for summary judgment; granting defendant's cross motion for summary judgment.]

Decided:  October 18, 2016

*John M. Peterson*, *Elyssa R. Emsellem*, *Maria E. Celis*, *Richard F. O'Neill*, and *Russell Andrew Semmel*, Neville Peterson, LLP, of New York, NY, for the plaintiff.

*Marcella Powell*, Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington DC, for the defendant.  On the brief were *Benjamin C. Mizer*, Acting Assistant Attorney General, and *Amy M. Rubin*, Assistant Director.  Of counsel on the brief was *Michael W. Heydrich*, Attorney, Office of the Assistant Chief Counsel for International Trade Litigation, U.S. Customs and Border Protection, of Washington DC.

Musgrave, Senior Judge: This matter is before the court on cross-motions for

summary judgment concerning the re-entry of 144 motor vehicles from Canada.  The plaintiff

Pleasure-Way Industries, Inc. challenges the decision of the defendant's U.S. Customs and Border

Protection ("Customs") denying the plaintiff's protests of Customs' classification of the imported

merchandise under the Harmonized Tariff Schedule of the United States ("HTSUS").   Customs

classified the merchandise under subheading 8703.33.00, HTSUS as "Motor cars and other motor

vehicles principally designed for the transport of persons", which carries a 2.5% duty rate (2007).[1]

The plaintiff argues that the proper classification for the merchandise is under subheading

9802.00.50, HTSUS ("Articles returned to the United States after having been exported to be

advanced in value or improved in condition by any process of manufacture or other means: Articles

exported for repairs or alterations: Other"), which enjoys duty-free treatment upon return to the

United States under the North American Free Trade Agreement ("NAFTA").

The court has jurisdiction pursuant to 28 U.S.C. §1581(a).  Ruling from the bench,

the court denied the plaintiff's motion for summary judgment and granted the defendant's cross-

motion for summary judgment.   This opinion sets forth the court's reasoning and holds that the

subject merchandise is properly classified under subheading 8703.33.00, HTSUS.

I.  *Standard of Review*

The court reviews Customs' protest decisions *de novo*. 28 U.S.C. § 2640(a)(1).

Summary judgment is appropriate when "there is no genuine issue as to any material fact."  USCIT

R. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).   In considering

whether materials facts are in dispute, the evidence must be considered in the light most favorable

---

[1]   8703.33.00, HTSUS in full reads: Motor cars and other motor vehicles principally designed for the transport of persons (other than those of heading 8702), including station wagons and racing cars: Other vehicles, with compression-ignition internal combustion piston engine (diesel or semi-diesel): Of a cylinder capacity exceeding 2,500 cc.

to the non-moving party, drawing all reasonable inferences in its favor.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Anderson*, 477 U.S. at 261 n.2.

Classification for customs duty purposes is a two-step process of determining the meaning of relevant tariff provisions (a question of law) and determining whether the "nature" of the merchandise (a question of fact) falls within the tariff provision as properly construed.  *E.g.*, *Orlando Food Corp. v. United States*, 140 F.3d 1437 (Fed. Cir. 1998).  When there is no factual dispute regarding the merchandise, the resolution of the classification issue turns on the first step, determining the proper meaning and scope of the relevant tariff provisions.  *See*, *e.g.*, *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006) ("[w]hen the nature of the merchandise is undisputed . . . the classification issue collapses entirely into a question of law"); *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365-66 (Fed. Cir. 1998).  This is such a case, and summary judgment is appropriate.  *See Bausch & Lomb*, 148 F.3d at 1365-66.

In its analysis, the court accords a measure of deference to Customs classification rulings in proportion to their "power to persuade".  *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001), citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).  In the final analysis, however, the court also has "an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms." *Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005), citing *Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1358 (Fed. Cir. 2001).

II. *Undisputed Facts*

Among the parties' papers, the following are averred as material facts not in dispute. The subject merchandise is certain van-based Class B motorhomes marketed and sold in the United

States as the "Pleasure-Way Ascent TS" or "Plateau TS." Plaintiff's Rule 56.3 Statement of Material

Facts Not in Dispute ("Pl's MFNID"), ECF No. 63, ¶ 114; Defendant's Response to Plaintiff's

Statement of Material Facts Not in Dispute ("Def's MFNID"), ECF No. 74, ¶ 114.

The plaintiff exported Daimler Chrysler AG ("DCAG") "Sprinter" cargo vans from

the United States to Canada, where the vans were classified under subheading 8703.33 of the

Canadian Customs Tariff and were subject to duty at 6.1% *ad valorem*.  Pl's MFNID, ¶¶ 70-72;

Def's MFNID, ¶ 70-72.

The plaintiff engaged in processing in Canada that encompassed the following

changes to the cargo vans: adding fiberglass running boards, installing subflooring, installing custom

cabinetry, installing a kitchenette with cooking facilities, installing a "wet bath" of toilet and shower

facilities, fitting a propane tank, installing a three-tank plumbing system and discharge outlets,

installing carpeting and linoleum flooring, adding an electric sofabed, adding electronics such as a

television and digital media players, and other modifications not listed here.  Pl's MFNID, ¶¶ 74-

110.

The plaintiff imported the subject merchandise from Canada to the United States

between January 2008 and September 2009.  Pl's MFNID, ¶ 111; *but see* Def's MFNID, ¶ 111 ("the

merchandise was entered between May 25, 2008 and November 10, 2008").

In September 2009, the plaintiff submitted a ruling request to Customs concerning

the applicability of subheading 9802.00.50, HTSUS, to the subject merchandise.  While Customs'

original ruling, HQ H077417, found that the subject merchandise was eligible for preferential

treatment under 9802.00.50, HTSUS, Customs later revoked the ruling and voided it *ab initio*, citing

Pleasure-Way's failure to adhere to Customs' regulation 19 C.F.R. §177.1(a)(2)(ii), which forbids

Customs from issuing a ruling where a similar or identical transaction has taken place or is pending

at the time the rule request is made.  Pl's MFNID, ¶ 25-30; Def's MFNID, ¶ 25-30.

Lastly, at liquidation Customs classified the motorhomes under 8703.33.00, HTSUS

as "other motor vehicles principally designed for the transport of persons, with compression-ignition

internal combustion reciprocating piston engine (diesel or semi-diesel) of a cylinder capacity

exceeding 2,500 cc" with duty of 2.5% ad valorem.[2]

### III. *Analysis*

The issue here is whether the plaintiff's van-based motorhomes are properly

classifiable as goods exported to Canada for "repairs or alterations" under subheading 9802.00.50,

HTSUS, as contended by the plaintiff, or whether the changes to the vehicles exceed the scope of

that classification, as contended by the defendant.

There is no dispute that motorhomes are classifiable under 8703.33.00, HTSUS.[3]

However, the plaintiff contended the motorhomes at issue properly belonged under subheading

9802.00.50, HTSUS, because the plaintiff made alterations to "completed" Sprinter vans exported

from the United States to Canada which "advanced [the vans] in value or improved [the vans] in

---

[2] The plaintiff stated that the vehicles were entered under 8703.24.00, HTSUS; however, the entry documents submitted by the plaintiff demonstrate that the vehicles were entered under 8703.33.0030, HTSUS. *See* Pl's MFNID, ¶ 111; Pl's Complaint, ¶ 13; *but see* Pl's Exhibit A1-A4, Parts 1-4; Def's MFNID, ¶ 111.

[3] Def's Br. at 5. The Explanatory Note to heading 8703, HTSUS, states that the heading includes "motor-homes (campers, etc), vehicles for the transport of persons, specially equipped for habitation (with sleeping, cooking, toilet facilities, etc.)".

condition", as provided in 19 C.F.R. §181.64, by "upfitting" the vans from cargo vans to motor

homes. Pl.'s Br. at 29. The plaintiff further argued that under Article 307 of NAFTA, the van-based

motorhomes should receive duty-free treatment. *Id*. The defendant argued that the Sprinter vans

exported to Canada as "unfinished" goods were altered beyond the permissible scope of subheading

9802.00.50, HTSUS, and that the plaintiff's alterations destroyed the essential characteristics of the

exported vans and created a new commercial product, and that this new commercial product cannot

be properly classified under the plain meaning of subheading 9802.00.50. Def's Br. at 5-6. The

court agrees with the defendant's characterization.

In order to qualify for the preferential treatment under subheading 9802.00.50,

HTSUS, the exported good must meet the requirements of 19 C.F.R. §181.64. Importantly, the

alterations must be made to goods that were "completed" or "finished" goods when exported from

the United States to Canada or Mexico."[4] S*ee Chevron Chem.,* 23 CIT 500, 508, 59 F. Supp. 2d

1361, 1369-70 (1990). A "finished" good is one that is suitable for its ultimate "intended use."

*United States v. J.D. Richardson Co.*, 36 C.C.P.A. 15, 18 (1948) (finding that exported articles that

are not yet suitable for their intended use are unfinished). "[A]lterations are made to *completed*

---

[4] The relevant portion of 19 C.F.R. §181.64 provides:
(a) For purposes of this section, "repairs or alterations" means restoration, addition, renovation, redyeing, cleaning, resterilizing, or other treatment which does not destroy the essential characteristics of, or create a new or commercially different good from, the good exported from the United States.
(b) *Goods not eligible for duty-free or reduced-duty treatment after repair or alteration*. The duty-free or reduced-duty treatment referred to in paragraph (a) of this section shall not apply to goods which, in their condition as exported from the United States to Canada or Mexico, are incomplete for their intended use and for which the processing operation performed in Canada or Mexico constitutes an operation that is performed as a matter of course in the preparation or manufacture of finished goods.

articles and do not include intermediate processing operations which are performed as a matter of course in the preparation or the manufacture of finished articles." *Dolliff & Co. v. United States*, 66 C.C.P.A. 77, 82, 599 F.2d 1015, 1019 (1979) (italics in original).  The parties disagreed over the meaning of "intended use".

The plaintiff attempted to demonstrate that the "intended use" of consequence is what use pertains to the merchandise in its condition as exported from the United States  The plaintiff argued that the vans were "completed" or "finished" prior to exportation to Canada because they were suitable for the use intended for them by the manufacturer, DCAG.  Pl's Resp. at 7.  The plaintiff argued that DCAG's intended use was for the vans to be driven as-is or to be upfitted, and that this intended use is the use upon which 19 C.F.R. §181.64 turns.  *Id.*

Precedent does not support the plaintiff's interpretation. The use of the article upon return to the United States is the "intended use" for purposes of HTSUS item 9802 classification. *See J.D. Richardson*, 36 C.C.P.A. at 17 ("unflanged" metal rims exported from the United States were not suitable for their intended use upon return to the United States as "flanged" metal rims under predecessor provision of HTSUS item 9802); *May Food*, 33 CIT 430, 433, 616 F. Supp. 2d 1349, 1352-53 (2009) (raw almonds exported from the US to be mixed with other ingredients and returned as almond brittle were "not commercially interchangeable with, or suitable to be sold as" almond brittle at the time of export); *Chevron Chem.*, 23 CIT at 509, 59 F. Supp. 2d at 1370 (holding that alpha olefin fraction exported from the United States was "unfinished" and that the French processing was intermediate processing because the returned article contained benzene rings that the exported fraction did not contain); *Peg Bandage*, 17 CIT 1344, 1344-45 (1993) (exported unsewn

bandages were not suitable prior to export for their ultimate intended use as reusable bandages);

*Guardian Indus.*, 3 CIT 9, 12-16 (1982) ("the exported articles of raw annealed glass were not

'completed articles' as they were entirely unsuitable for their intended use in the United States as

sliding glass patio doors"). Contrary to the plaintiff's characterization of the current state of the law,

"[t]he question is not whether the [exported good] is finished for purposes of being manufactured

into [the altered good]." *Chevron Chem.*, 23 CIT at 508, 59 F. Supp. 2d at 1369-70. "Rather, the

question is whether the [exported good] is a finished product for tariff purposes" on return to the

United States, and "in order for an article to be 'finished' it must be suitable for its ultimate intended

use" at the time of export from the United States. *See id.*, 23 CIT at 508, 59 F. Supp. 2d at 1370.

Here, the Sprinter vans were not "interchangeable with[] or suitable to be sold as"

motorhomes at the time of export to Canada. Therefore, following the reasoning of the court in *May*

*Food* and other prior cases, the vans were not "complete" or "finished" for their ultimate intended

purposes (*i.e.*, as motorhomes) at the time of export to Canada and are therefore ineligible for

preferential treatment under subheading 9802.00.50, HTSUS.

Additionally, to qualify for preferential treatment, repairs or alterations made to the

exported good must not "destroy the essential characteristics of, or create a new or commercially

different good from, the good exported from the United States." 19 C.F.R. §181.64. "Changes and

additions to an article constitute alterations so long as the article has not lost its identity or has not

been converted into something else." *Chevron Chem.*, 23 CIT at 507, 59 F. Supp. 2d at 1369. To

determine whether foreign processing has created a new commercial article, the court compares the

differences between the exported article and the returned article, including name, uses, performance

characteristics and commercial applications.  *Guardian Indus.,* 3 CIT at 14 ("for tariff purposes[,]

a process which converts one article into a new article is not an 'alteration'") (citations omitted).

The processing completed in Canada destroyed the essential characteristics of the Sprinter cargo vans

and created a new commercial article, making the motorhomes ineligible for preferential treatment

under subheading 9802.00.50, HTSUS.

First, the changes made in Canada destroyed essential characteristics of the Sprinter

cargo vans.  *See Marubeni America Corp. v. United States*, 17 CIT 360, 821 F. Supp. 1521 (1993),

*aff'd* 35 F.3d 530 (Fed. Cir. 1994) (addressing distinctions between motor vehicles for transport of

goods and motor vehicles for transport of persons).  It is true, as the plaintiff argues, that several

characteristics of the motorhomes remained unchanged during the Canadian processing, specifically

the vans' "size, power, maneuverability, and safe operation", and that the plaintiff's processing did

not make any modifications to those van parts listed in the Body Builder Book as "forbidden" to

modify (axles, steering system, brake system, springs, spring mountings, shock absorbers, wheel

alignment, fuel system, engine, and drive train components).  Pl's Br. at 35-38.  But this set of

characteristics applies to a broad range of motor vehicles, not uniquely to an exported cargo van or

an imported motorhome.  Determining essential characteristics only on these grounds neglects to

consider the significant changes made to the name, price, and usage of the vehicles. *See Guardian

Indus.*, 3 CIT at 12-16 (finding that the name, use, and tariff heading were relevant to determining

the essential characteristics of an article). Further, as the defendant averred, "[t]he most important,

indispensable and necessary characteristic of a cargo van is its ability to transport goods", and the

modifications made by the plaintiff stripped the Sprinter vans of their cargo-transporting identity by

"virtually eliminat[ing] the vans' cargo areas by filling [the cargo area] with sleeping

accommodations, bathrooms, kitchens, and other facilities." Def's Br. at 24; *see also* Pl's Ex. F.

Furthermore, these motorhomes would no longer be classifiable as motor vehicles used for

transporting goods because the cargo hold has been refitted with living quarters.[5] *See Guardian*

*Indus.*, 3 CIT at 15-16.

Second, these changes created a  new commercial vehicle, as evidenced by changes

to the pricing, the applicable tariff heading, the use, and the name of the vans.  Def's Br. at 20-21;

*Guardian Indus.*, 3 CIT at 12-16.   The plaintiff purchased the Sprinter cargo vans from car

dealerships in the United States at (obviously) lower prices than the manufacturer's suggested retail

price of the motorhomes it sells.  The defendant argues that the motorhomes' tariff classifications

also changed: the cargo vans at export to Canada were classifiable under 8704, HTSUS, as motor

vehicles for the transport of goods, and upon return to the United States they are motorhomes

classifiable under 8703, HTSUS, as motor vehicles principally designed for the transport of persons.[6]

Attempting to demonstrate that no new commercial article is created, the plaintiff

relied heavily on *Press Wireless* for the proposition that an article which, when returned to the

---

[5]   *See* heading 8703, HTSUS ("[m]otor cars and other motor vehicles principally designed
for the transport of persons" and 8704, HTSUS ("[m]otor vehicles for the transport of goods"); *see
also* Explanatory Note to 8703, HTSUS, "[t]he heading also includes: . . . [m]otor-homes, (*campers*,
etc.), vehicles for the transport of persons, specially equipped for habitation (with sleeping, cooking,
toilet facilities, etc.)" (bolding omitted; italics in original).

[6]   According to Pleasure-Way, the Sprinter vans were imported into Canada under the
Canada Customs Tariff subheading 8703.33 which covers "motor cars and other motor vehicles
principally designed for the transport of persons". Canada Customs Tariff Schedule, section 8703.33
(note that 8703.33.00.21 and 8703.33.00.22 both address motorhomes but in its papers, the plaintiff
did not specify under which subheading the vans were imported into Canada).

United States after processing, is recognizable as the same article previously exported but in an altered or improved condition is not a new commercial article. Pl's Br. at 38, citing *Press Wireless, Inc. v. United States*, 6 Cust. Ct. 102, 105 (1941) (which found that repairs to worn-out radio tubes using an improved material, which made the tubes "more efficient[, was] of no consequence"). The plaintiff argued that because the VIN remains the same after processing and that the relevant United States agency would therefore recognize the van as the same article upon return, the Canadian processing has not created a new commercial article. Pl's Br. at 38-39. However, the instant merchandise is readily distinguishable from the holding in *Press Wireless*, wherein the goods were exported to be repaired to their "original" state of good (albeit improved) working order, not for the purpose of creating an entirely new use.

The exported article was a Sprinter van ready for use as a cargo van, with a cargo bed in the back and no additional "creature comforts". Upon return, the motorhomes no longer resembled the exported cargo vans, as they had lost their interior cargo space in exchange for cooking, sleeping, and toilet facilities. The motorhomes are no longer classifiable as motor vehicles for the transport of goods, are not recognizable (in the interior) as cargo vans, have different price points than the exported vehicles, and are classifiable under a different tariff heading and subheading. This is a different vehicle in its very nature from that which was exported.

Finally, regarding Customs Ruling HQ H077417, the ruling was properly revoked and is, as stated, void *ab initio*, as *per* Customs' revocation dated Jan. 22, 2009. Despite Customs not finding fault with its own logic as the plaintiff avers, the voided ruling has neither binding nor persuasive bearing on the court's decision here and does not merit *Skidmore* deference. On the

evidentiary issue raised in Pleasure-Way's briefing, the argument is moot since the Customs rulings were already admitted into evidence as part of the administrative proceeding.

A "repair or alteration" is a change to a good finished for its intended use, which does not destroy the essential characteristics of, or create a new commercially different good from, the good exported from the United States. The plaintiff's changes were to vehicles not finished for their intended use upon re-entry as motorhomes. These changes destroyed the cargo vans' essential characteristics of being able to transport cargo because the cargo space became fully occupied by structures for inhabitation. Furthermore, these additions created a new commercially different good from the good exported.

## IV. *Conclusion*

The court grants defendant's cross-motion for summary judgment, on the basis that the plaintiff's goods do not satisfy the requirements of 19 C.F.R. §181.64 and therefore cannot be classifiable under subheading 9802.00.50, HTSUS.

/s/ R. Kenton Musgrave
R. Kenton Musgrave, Senior Judge

Dated: October 18, 2016
New York, New York